IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BLANCA HERNANDEZ, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL ACTION NO. |
| | :: | 1:14-CR-196-TWT-LTW-15 |
| | :: | |
| UNITED STATES OF AMERICA, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:17-CV-278-TWT-LTW |

## FINAL REPORT AND RECOMMENDATION

Movant is a federal prisoner who filed a motion under 28 U.S.C. § 2255 challenging her judgment of conviction. (Doc. 605.)[1] Respondent opposes the motion. (Doc. 620). For the reasons discussed below, the undersigned recommends that the motion be denied.

## I.  Background

Attorney Elizabeth Vila Rogan represented Movant in this case. Movant pled guilty, pursuant to a negotiated plea agreement, to conspiring to distribute illegal drugs, including methamphetamine. (Docs. 159, 479-1.) The plea agreement described the following facts.

---

[1] All citations to the record are to case number 1:14-cr-196-TWT-LTW.

AO 72A
(Rev.8/82)

Movant "was a broker and distributor of narcotics" for a drug trafficking organization that "used passenger buses to transport illegal narcotics from Mexico into the United States, unloaded the narcotics in local warehouses within the Atlanta area, and thereafter loaded the drug proceeds in the buses for transport back to Mexico." (Doc. 479-1 at 5.)  In a telephone call with co-Defendant Arroyo in January 2014, which law enforcement agents intercepted, Movant requested that she receive methamphetamine with payment to follow later.  (*Id.*)  Arroyo told Movant he would send five kilograms of methamphetamine concealed in a commercial battery via a courier driving a red Chevrolet vehicle with a Tennessee license plate.  (*Id.* at 5-6.)

As planned, the courier met Movant at a store in the Atlanta area in a red Chevrolet vehicle containing at least one battery.  (*Id.* at 6.)  Movant sent the courier to a house where the battery could be opened and the methamphetamine retrieved.  (*Id.*)

After the methamphetamine was delivered, Movant called Arroyo and told him that "'some came out low and they are very wet.'"  (*Id.*)  As explained below, that statement by Movant is at the core of most of the claims in her § 2255 motion.

Less than twenty-four hours after that drug transaction, police in the Atlanta area stopped a red Chevrolet vehicle with a Tennessee license plate.  (*Id.* at 7.)  One

2

of Movant's co-Defendants was driving the vehicle. (*Id.*) There were ten commercial batteries in the vehicle, each containing six bricks of methamphetamine. (*Id.*) The total weight of all the methamphetamine in those batteries was 50.99 kilograms, which is an average of just over five kilograms per battery. (*Id.*)

Three months later, police observed Movant and Arroyo together in a store parking lot. (*Id.*) Movant was talking to Arroyo and with another co-Defendant by phone. (*Id.*) Police intercepted the call, in which Movant discussed her drug debt. (*Id.*)

Almost one month later, police arrested Movant at her home. (*Id.*) The same car that was at Movant's meeting with Arroyo was at her home. (*Id.*) Two phones seized from Movant's home contained text messages with co-Defendants and pictures of large bundles of cash. (*Id.*)

At Movant's plea hearing, Respondent's counsel described those facts as the basis for the plea. (Doc. 614 at 20-23.) As she did in the written plea agreement, Movant agreed at the hearing to all those facts. (*Id.* at 23; Doc. 479-1.)

A Pre-Sentence Report ("PSR") was prepared after the plea hearing. Rogan did not object to any of the facts in the PSR or to the PSR's calculation of the advisory

3

range of imprisonment under the U.S. Sentencing Guidelines (the "Guidelines"). (Doc. 612 at 3.)

At the sentencing hearing, the Court found Movant responsible for at least five kilograms of methamphetamine, which resulted in a higher Guidelines range than if the quantity had been less than five kilograms. (*Id.*) After accounting for that drug quantity and giving Movant credit for acceptance of responsibility, the range was 97 to 121 months of imprisonment. (*Id.* at 3-4.) The statutory minimum sentence was 120 months of imprisonment, but Respondent agreed to application of the safety valve provision, which effectively removed the statutory minimum. (*Id.* at 4.)

The Court sentenced Movant to ninety-seven months of imprisonment and five years of supervised release. (*Id.* at 12; Doc. 512.) The Court found that Movant was part of "a very large and organized drug trafficking organization, which distributed hundreds of pounds of illegal narcotics into the Atlanta, Georgia area" but that Movant's "role in that organization was relatively limited in comparison to some of her other co-conspirators." (Doc. 612 at 14.) The Court found "that under all of the facts and circumstances of the case, the [97-month] sentence is a fair and reasonable one." (*Id.*) Movant did not file an appeal.

Movant asserts the following claims in her § 2255 motion:

4

1.    her plea was unknowing, unintelligent, and involuntary because she did not understand the adverse consequence of stipulating to five kilograms of methamphetamine when the true quantity was lower;

2.    Rogan rendered ineffective assistance by not adequately advising and representing Movant before she pled guilty, thus allowing Movant to stipulate to an unduly elevated drug quantity; and

3.    Rogan rendered ineffective assistance at sentencing by not objecting to the erroneous drug quantity and not seeking a Guidelines sentence reduction for Movant's minor role in the conspiracy.

(Doc. 605 at 4-7, 13-26.) Movant presents the first claim as a violation of her right under the Fifth Amendment to the U.S. Constitution to due process and the other claims as violations of her right under the Sixth Amendment to the effective assistance of counsel. (*Id.*)

## II.    Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). "To obtain collateral

5

relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004). "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [her] . . . from raising [her] claims on direct appeal and that this factor cannot be fairly [attributed] to [her] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004).

To establish ineffective assistance of counsel, a § 2255 movant must show that her counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To

6

establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that her lawyer took or would have failed to take the action she contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III.   Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The record in this case conclusively demonstrates that Movant is not entitled to relief under § 2255.

### A.   The Due Process Claim

As discussed above, Movant was held responsible for five kilograms of methamphetamine, resulting in an advisory range of imprisonment under the

7

Guidelines of 97 to 121 months. *Supra* Part I. Movant states that if she had been held responsible for less than five kilograms of methamphetamine, the advisory range of imprisonment would have been 78 to 97 months. (Doc. 605 at 16.) Movant presumes that because the Court sentenced her to the bottom of the calculated advisory range, the Court would have sentenced her to the bottom of what she says the range should have been. (*See id.*)

Movant contends that five kilograms was the erroneous quantity and that the "true amount [was] just less than 5 kilograms." (*Id.*) According to Movant, "the record plainly showed that [her] . . . involvement in the [conspiracy] offense related to a transaction as to which the buyer found that the methamphetamine delivered was less than 5 kilograms and that the delivered product was, in part, saturated with moisture, adding an unusable weight that would need to be evaporated before the methamphetamine could be smoked or otherwise used." (*Id.* at 15.) The sole basis for those contentions is Movant's statement to Arroyo on an intercepted phone call that of the methamphetamine Arroyo sent Movant, "some came out low and they are very wet." (Doc. 479-1 at 6.)

Movant's due process claim is that she did not understand the consequences of admitting guilt to what she now says was more methamphetamine than was delivered.

8

That claim is procedurally defaulted because Movant could have raised it in a direct appeal but did not do so.

The U.S. Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). "[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.*; *Jones v. United States*, 153 F.3d 1305, 1307 (11th Cir. 1998) (agreeing that *Bousley* "resolves the issue" of whether a failure to challenge the validity of a guilty plea "on direct appeal bars [a defendant] from doing so in a § 2255 petition").

Movant did not challenge her plea before filing her § 2255 motion, in a direct appeal or otherwise, and she did not offer any reason for not doing so. Movant thus defaulted the claim and has shown neither cause nor prejudice to overcome the default. The Court cannot consider the claim. *See Black*, 373 F.3d at 1142 (holding that a court cannot consider a defaulted claim unless the § 2255 movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error").

9

B.     The Ineffective Assistance Of Counsel Claims

These claims (except one) also rest on Movant's contention that she was not responsible for five or more kilograms of methamphetamine because the methamphetamine delivered to her, according to her statement to Arroyo at the time, was "low" and "very wet." (Doc. 479-1 at 6.) Movant relies on three opinions from the U.S. Court of Appeals for the Eleventh Circuit to support her contention. (Doc. 605 at 15.) The court of appeals held in those cases that only the usable weight of the drugs at issue could be included in the calculation of the drug quantity for which the defendants were responsible. *United States v. Newsome*, 998 F.2d 1571, 1576-78 (11th Cir. 1993); *United States v. Bristol*, 964 F.2d 1088, 1089-90 (11th Cir. 1992); *United States v. Rolande-Gabriel*, 938 F.2d 1231, 1235-36 (11th Cir. 1991).

Respondent correctly notes that those cases do not control the situation here because, unlike in those cases, the methamphetamine Movant bought was not seized by the government and, thus, was not available to be tested or weighed. *See id.* The Court thus had to estimate the drug quantity from other evidence.

"It is well-established that [t]he determination of the quantity of drugs involved in a conspiracy for the purpose of sentencing is a factual determination" for the court. *Newsome*, 998 F.2d at 1577 (quotation marks omitted). When the drugs involved in

10

the crime are not available for testing or weighing, the court determines the drug quantity based on the preponderance of the evidence, including evidence presented at sentencing and undisputed facts in the PSR.  U.S. Sentencing Guidelines Manual § 2D1.1, cmt. n.5 (U.S. Sentencing Comm'n 2015) ("Where there is no drug seizure . . . the court shall approximate the quantity of the controlled substance."); *United States v. Almedina*, 686 F.3d 1312, 1316 (11th Cir. 2012) ("[T]he district court must approximate the drug quantity.").  The court may rely on evidence of other drug sales to determine the drug quantity.  *Id.*; *United States v. Prince*, 110 F.3d 921, 925 (2d Cir. 1997) (affirming district court's estimate of quantity of marijuana in boxes that were not seized based on the weight of other boxes of marijuana that were seized).

Here, there was sufficient evidence for the Court to estimate the quantity of methamphetamine for which Movant was responsible, and all of that evidence was undisputed.  Movant agreed with Arroyo to the purchase of five kilograms of methamphetamine that would be concealed in a battery. *Supra* Part I.  Just hours after the methamphetamine was delivered to Movant, police found the car in which it was delivered to contain 50.99 kilograms of methamphetamine in the same type of container (a battery) as was used in Movant's delivery.  *Id.*  The 50.99 kilograms was spread over ten batteries, which is an average of over five kilograms per battery.  The

11

methamphetamine delivered to Movant was in one battery. *Id.* All of that undisputed evidence provided a sufficient basis for the Court to estimate and determine the quantity of methamphetamine attributable to Movant as being at least five kilograms.

Rogan thus was not deficient for determining that Movant was admitting to the proper amount of drugs and advising her accordingly, or for not objecting to use of at least five kilograms of methamphetamine in the Guidelines calculation. A reasonable lawyer would have concluded from the undisputed evidence described above, including Movant's vague statement to Arroyo on an intercepted call that some of the drugs she received were "low and . . . very wet," (doc. 479-1 at 6), that Movant could be held responsible for five or more kilograms of methamphetamine. Things might be different if the methamphetamine delivered to Movant had been seized, but on this record there was not a meritorious claim that Movant wrongly agreed to a quantity of at least five kilograms. *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (holding that because claims lacked merit, "any deficiencies of counsel in failing to raise or adequately pursue them cannot constitute ineffective assistance of counsel").

The U.S. Supreme Court repeatedly has emphasized that criminal defense counsel "should be 'strongly presumed to have rendered adequate assistance and made

12

all significant decisions in the exercise of reasonable professional judgment'" and reminded courts to faithfully apply the "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013); *see Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1299 (11th Cir. 2014) ("[T]he *Strickland* test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted at trial." (quotation marks omitted)). Movant has not overcome that strong presumption as to Rogan's performance regarding the drug quantity at the plea and sentencing stages.

Movant also has not shown that she was prejudiced by Rogan's alleged deficient performance in connection with her guilty plea. "[I]t is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010). "[I]n order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (quotation marks omitted). "Moreover, to obtain relief on this type of claim, a petitioner must convince

13

the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

Movant did not allege in her § 2255 motion, much less offer any evidence, that she would have pleaded not guilty and stood trial if Rogan had told her that the drug quantity in the plea agreement was too high and would increase her sentence. (Doc. 605); *see Hill*, 474 U.S. at 60 (holding that petitioner did not satisfy prejudice prong of *Strickland* claim where he "did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial"). Nor has Movant shown that standing trial would have been a rational decision. The only evidence Movant identified, or that is in the record, to support her contention that she should be responsible for less than five kilograms of drugs is her vague statement to a co-defendant. Movant has not shown that her statement, alone, would have swayed a jury given the abundance of other evidence regarding drug quantity. Movant has not established the prejudice prong of her claim that Rogan was ineffective in connection with her guilty plea.

Movant's final claim is that Rogan was ineffective for not arguing for a minor role adjustment to the calculation of the advisory imprisonment range under the Guidelines. Here too, Movant has shown neither deficient performance nor prejudice.

14

A court may reduce the offense level under the Guidelines for a "minor participant" in the crime. U.S.S.G. § 3B1.2. A "minor participant" is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* cmt. n.5. The court has "discretion in this uniquely fact-intensive inquiry," but is "informed by two principles . . . first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct." *United States v. Rodriguez De Varon*, 175 F.3d 930, 940 (11th Cir. 1999). A defendant is entitled to a minor role adjustment "[o]nly if [she] can establish that she played a relatively minor role in the conduct for which she has already been held accountable – not a minor role in any larger criminal conspiracy." *Id.* at 944.

Movant points to the larger conspiracy of which she was a part and her conduct compared to that of the numerous other co-defendants in that larger conspiracy to support her argument that she was entitled to a minor role adjustment. (Doc. 605 at 24-26.) That is inconsistent with the law discussed above. The proper focus is Movant's role in the conduct underlying her crime, and her admission that her "involvement . . . was limited to the charged transaction," (*id.* at 24), effectively guts her claim. The conduct, or transaction, underlying Movant's crime was the negotiated

15

purchase of five kilograms of methamphetamine. Movant was not a minor participant in *that* conduct. The "conduct of the participants in any larger criminal conspiracy is irrelevant." *See Rodriguez De Varon*, 175 F.3d at 944.

Movant negotiated the drug transaction for which she was held responsible with a senior member of a drug trafficking organization, exercised discretion in the logistics of that transaction, negotiated the means and manner of payment for the transaction, and had photographs of large bundles of cash on her phone. Movant was held responsible for only that relevant conduct. Thus, her role in that conduct – as opposed to other conduct involving other drug transactions by other co-conspirators – was not minor or less than others involved in that same conduct. *See United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006) ("When the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable.").

For those reasons, Movant has not shown that Rogan was deficient for not seeking a minor role adjustment in the Guidelines calculation. Nor has she shown prejudice, i.e., that the Court would have found by a preponderance of the evidence that Movant was a minor participant in the drug transaction she brokered had Rogan

16

sought that finding.  While the Court found that Movant's role in the overall drug trafficking organization "was relatively limited," the Court found that the organization was "very large and organized" and that Movant's 97-month prison sentence was fair and reasonable.  (Doc. 612 at 14.)  Movant has not shown that the Court would have imposed a lesser sentence if Rogan had argued for a minor role adjustment.  Having shown neither deficient performance nor prejudice, Movant is not entitled to relief on any of her ineffective assistance claims.

## IV.    Certificate Of Appealability ("COA")

A federal prisoner may not appeal the denial of her § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

AO 72A
(Rev.8/82)

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here.  Movant defaulted her due process claim and has not shown that she received ineffective assistance of counsel.  Those conclusions are not reasonably debatable.

## V.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence under 28 U.S.C. § 2255 [605] and a certificate of appealability be **DENIED** and that case number 1:17-cv-278-TWT-LTW be **DISMISSED**.

**SO RECOMMENDED** this 21 day of November, 2017.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

18